ZACHARIAH CLARK, jun. *against* EZRA H. JOHNSON.

**MOTION** for a new trial.

This was an action of *disseisin*, for a certain parcel of land in *Newtown*. The defendant pleaded the general issue ; and the jury returned their verdict in his favour.

On the trial before the Superior Court, it was agreed, that before, and until the 6th of *September*, 1799, one *Oliver Tousey* was well seised and possessed of the premises, and that the defendant was in the possession thereof, at the date of the plaintiff's writ.

It was proved by the plaintiff, that on the 6th of *September*, 1799, *Tousey*, by deed, with covenants of warranty and seisin, and absolute upon the face of it, conveyed the demanded premises to one *Rufus Peck ;* and that on the 21st of *December*, 1801, *Peck*, by a similar deed, conveyed the same land to the plaintiff.

It was agreed, also, that the defendant's title was derived from one *Zachariah Lyon*, by deed, dated the 16th of *April*, 1810 ; and that *Lyon's* title accrued by the levy of an execution against *Tousey*, in the year 1810 : So that the defendant's title was valid, upon the supposition, that the deed from *Tousey* to *Peck*, could be impeached, on the ground of fraud ;

In *September*, 1799, *A.*, being insolvent, conveyed to *B.* a parcel of land, by deed, with covenants of warranty and seisin ; *B.*, at the same time, executed to *A.*, a deed of defeasance, whereby it was stipulated, that if *A.* should pay a certain debt, for the payment of which *B.* had become his surety, the land should be reconveyed. The debt was discharged by *A.* on the 21st of *December*,

1801, when the defeasance was cancelled, not having been recorded. At this time, *C.* became bound, as surety for *A.*, that *A.* should perform a certain contract ; and to indemnify *C.* on account of his bond, *B.*, in pursuance of an agreement between *A.* and *C.*, conveyed the land to *C.* ; and *C.*, at the same time, entered into a written agreement, (which was not recorded,) to reconvey the land to *A.*, on condition that he would indemnify him against his bond. *A.* failed to indemnify *C.*, who was compelled to pay, on account of his bond, a much larger sum than the value of the land. *A.* continued in the use and occupation of the land, from the year 1799, to 1810, without paying rent ; and in the year 1807, mortgaged the land to sundry persons. *A.*, also, in *September*, 1799, conveyed another parcel of land to *E.*, without any *bona fide* consideration, and upon an express agreement that such land should be, afterwards, reconveyed. In an action of *disseisin* brought by *C.* against *D.*, who claimed title to the land, by virtue of the levy of an execution, in 1810, it was held, that evidence of *A.*'s remaining in possession of, and mortgaging the land, was admissible.

Held, also, that *E.* was not a competent witness to prove the facts in relation to the conveyance of *A.* to him.

Held, also, that *A.*, after having been released by *B.* and *C.*, from all claims on account of the covenants in his deed to *B.*, was a competent witness to prove the facts relating to the conveyances from him to *B.*, and from *B.* to *C.*

Held, also, that *A.* was not an incompetent witness, on account of any supposed right to the equity of redemption, in the land in question.

but if otherwise, it was admitted, that the defendant had no title.

The defendant claimed, that the deed from *Tousey* to *Peck*, was fraudulent : And to prove this, introduced evidence to shew, that *Tousey*, in *September*, 1799, and at the time of the execution of the deed, was insolvent, and was about to abscond ; and that, at the same time, he conveyed to sundry persons all his property. This evidence was admitted without objection.

The defendant, also, for the purpose of shewing, that *Tousey* treated the property as his own, offered to prove, by the testimony of sundry witnesses, that he had continued in the possession of the land in question, taking the whole rents and profits, down to the time of the levy of *Lyon's* execution, in 1810 ; and that on the 28th of *July*, 1807, he mortgaged the land to one *Joseph Nichols* ; and also, on the 11th of *March*, 1809, mortgaged the same to the Episcopal Society, in *Newtown*. The plaintiff objected to the admission of this evidence ; but the court overruled the objection, and permitted it to go to the jury.

The defendant, also, offered to prove, by the testimony of one *Nathan Ferris*, to whom, *Tousey*, on the 21st of *September*, 1799, and at the time of his alleged failure and absconding, executed a deed of a part of his real estate, that such deed was made with intent to defraud his creditors, and upon an express agreement, that the land should be, afterwards, reconveyed to the grantor. The plaintiff, also, objected to this evidence ; but the court overruled the objection, and suffered the witness to testify to the facts last-mentioned.

The plaintiff, for the purpose of shewing the validity of the deed from *Tousey* to *Peck*, and also, of that from *Peck* to the plaintiff, offered *Tousey*, as a witness, he having been released from all liability on account of the covenants in his deed to *Peck*, to prove that the deed from him to *Peck*, was made and executed for the purpose of indemnifying him, as surety, for a debt due from *Tousey*, to one *Solomon Glover* ; that on the execution of the deed, an agreement, in writing, was entered into, by which *Peck* cov-

enanted to reconvey the land, on condition, that *Tousey* should save him harmless, on account of his suretyship ; that he, *Tousey*, paid the debt to *Glover*, on the 21st of *December*, 1801 ; and that, thereupon, the defeasance of *Peck* was cancelled ; and that, afterwards, on the same day, *Tousey* procured the plaintiff to give his bond to one *Elihu Crofut*, to secure the performance of the covenants in a deed, by which he had conveyed certain lands to *Crofut*, and to indemnify the plaintiff on account of such bond, *Peck*, in pursuance of an agreement between him and *Tousey*, and the plaintiff, executed to the plaintiff, the deed of the demanded premises, as before mentioned ; that at the time of the execution of the bond, the plaintiff executed to *Tousey*, a deed of defeasance, (which was never recorded,) by which it was stipulated, that the plaintiff should reconvey the premises, on condition that *Tousey* should indemnify him against his bond to *Crofut* ; that *Tousey* had failed to indemify him against such bond ; and that he had been compelled to pay, on that account, a sum much larger than the value of the land.

The defendant objected to the admission of *Tousey*, as a witness, to prove the facts before mentioned, on the ground, that he was interested in the event of the suit, on account of the covenants in his deed to *Peck* ; and also, that he was interested to shew himself a mortgagor of the premises, and entitled to the equity of redemption. The court adjudged, that *Tousey* was an incompetent witness to prove the facts above stated. Whereupon, the plaintiff moved for a new trial, on the ground, that the court erred in admitting the evidence offered by the defendant ; and also, in rejecting the testimony of *Tousey* ; and the questions of law arising upon the motion, were reserved for the consideration of the nine Judges.

*Daggett*, in support of the motion. The question, in this case, turns upon the validity of *Tousey's* deed to *Peck*.

1. The acts of *Tousey*, in conveying the land in question, to *Nichols*, and the Episcopal Society, ought not to have been admitted, as evidence, that the deed from him to *Peck*,

was fraudulent. The declarations of the grantor, made after the execution of the deed, cannot be admitted to defeat the conveyance. But there is another reason why this evidence should not have been admitted. If *Peck* or *Clark* had made any declarations, or performed any acts, the evidence of them would have been inadmissible. The declarations of a man cannot strengthen his own title. To admit evidence of such declarations, would be allowing any one to make evidence in his own favour.

2. The court erred in permitting the witness, *Ferris*, to testify, that *Tousey's* deed to him, was fraudulent. Here the court permitted the grantee to give evidence, that the deed was not made *bona fide*. This was not a part of the same transaction with the deed in question. There is no relation between the two cases. From this manner of reasoning, it would seem to follow, that the deed in question was not valid, merely, because, at some other time, the grantor executed another deed, which was fraudulent. The principle here attempted to be supported, goes farther than can be justified, by any decision, either ancient or modern. *Hart* v. *Tallmadge*, 2 *Day's Rep.* 381. *Gibson* v. *Hunter*, 2 *H. Black.* 288. *Gardner* v. *Preston*, 2 *Day's Rep.* 205. The strongest case to be found on this subject, is the case of *Beal* v. *Thatcher*, 3 *'Esp. Rep.* 194. cited in 2 *Day's Rep.* 209. In the latter case, a " subsisting fraudulent connexion," was a part of the issue. In the present case, a jury is called upon to say, that the deed from *Tousey* to *Peck*, is fraudulent, because a deed from *Tousey* to *Ferris*, is fraudulent. Suppose a man is in the habit of cheating or stealing: These circumstances may have an influence on the mind; but no one will contend, that the man could be lawfully convicted as a cheat, or felon, upon such evidence as this. The effort in this case, is nothing more than an attempt to prove, that *Tousey* cheated another man.

But further, the plaintiff could not be prepared to meet this evidence.

3. The decision of the court, rejecting the evidence of *Tousey*, was incorrect. There has been a conflict of opin-

ions on this point.  The point was discussed  in the  case of
*Abby* v. *Goodrich*, 3 *Day's Rep.* 433., and was decided by the
Superior Court ; but in this court, it was  decided  on other
grounds.   In the case last cited, the witness had an interest ;
he acquired  property by his  own  oath.   There is a great
diversity between that case, and the present.   Here, *Tousey*
had no interest whatever.  The plaintiff had paid much more
money for him than the land was worth.   He, therefore, could
have no interest, as mortgagor.   *Clark*, (the plaintiff,) and
*Peck*, had  given him a release of all claim, on account of the
covenants in his deed to *Peck :*  He, therefore, could have no
interest, on the ground of his liability  to an action for breach
of covenant.

But it is said, that this is a covenant which runs with the
land ; and  that  the  plaintiff's grantee may have a right of
action against *Tousey*, for a breach.   But it is no ground of
rejecting a witness, that a series of events may occur, which
will cause him to be interested.   The truth is, that a release,
made before there is an assignment, discharges the  right of
the assignee to sue on  the covenant.   *Co. Litt.* 392.   *Mid-*
*dlemore* v. *Goodale, Cro. Car.* 503.


*R. M. Sherman*, contra.

1. In all cases,  where sales are claimed  to be fraudulent,
it is competent to give in evidence the fact, that the grantor
remained in possession.   The rule is  applicable to sales of
real, as well as personal property.   The question, in the pre-
sent case, is, whether the conveyance from *Tousey* to *Peck*,
was *bona fide*, or ostensible only ?  The determination of this
question, depends  upon the conduct of the parties.   We of-
fered to shew, that the grantor remained in possession  of the
property,  long  after the  conveyance :  And in  addition to
this, we offered evidence of  his having  given mortgages of
this land, from time to time.   Remaining in possession is only
*prima  facie* evidence ;  the  giving of  mortgages furnishes a
much stronger presumption, that the original conveyance was
fraudulent.   This act is, unequivocally,  adverse to  the title
of the grantee.   The  presumption  claimed as arising  from

Nov. 1812.

CLARK
v.
JOHNSON.

this act, is this, that a man who has purchased a piece of land, *bona fide*, will not suffer the grantor to remain in possession, and use it as his own, without any accountability for the rents and profits. If a man stands by, and sees his right denied, without asserting it, it affords a strong presumption that he has no right.

2. Was the testimony of *Ferris*, properly admitted? It is contended, that it was proper and relevant. It must be admitted, that it was proper to shew, that *Tousey* was divesting himself of his property, generally. What reason should be given for this? The reason is, that the circumstance of his being insolvent, and embarrassed by his creditors, furnishes a presumption, that he will make a fraudulent conveyance; and that he intends to defraud his creditors.

The conduct of *Tousey*, is tantamount to a general declaration, that he intended to defraud his creditors. A declaration of this sort, can, certainly, be proved. It is not necessary, in order to defeat a conveyance, that fraud should be intended on the part of the grantee. The fraudulent intent of the grantor, is sufficient, to render the conveyance void. And if it is not fraudulent, on the part of the grantor, the fraudulent intent of the grantee, will not make it so.

3. The next question is, whether *Tousey* was a competent witness? If the warranty contained in the deed to *Peck*, is a covenant which runs with the land, it cannot be discharged, but by the release of the individual who may claim damages for a breach of the covenant. 4 *Com. Dig.* 282. (*Rose's* edit.)

A remote, consequential interest in the event of the suit, will disqualify a witness. A case may be supposed, where *Tousey* might give in evidence a verdict for the plaintiff, obtained by his own testimony.

*Tousey* will always have an interest in having a verdict in the plaintiff's favour; because, whenever the defendant comes into possession, he will be bound to maintain the title.

*Tousey* was properly rejected, on another ground. He had an interest in the equity of redemption, in case the verdict were in favour of the plaintiff; but not so, if it should be in favour of the defendant. If *Tousey* was entitled to the equi-

ty of redemption, he had an interest, which would exclude him, as a witness. The objection, that the equity of redemption was of no value, is not entitled to consideration. If *Tousey* was entitled to redeem, it is perfectly immaterial whether his interest was great or small. It is sufficient to say, that he might choose to redeem ; and, in that case, he would have a direct interest.

INGERSOLL, J. delivered the opinion of the Court. So far as respects the question, whether it was proper to admit proof, that *Oliver Tousey*, after he had made the conveyances claimed to be fraudulent, remained in possession of the land conveyed, and made conveyances of the same, in the manner stated in the motion, I am of opinion, that such proof was properly admitted. This point has been so often decided, and is, as I apprehend, so perfectly clear, that I shall spend no time to prove it.

Equally clear is it, also, as it strikes me, that the admission of *Nathan Ferris* to testify to the facts, to which it is stated in the motion, he did testify, was improper. For, however proper it might have been, in order to establish the conveyances under consideration, to be fraudulent, to admit proof that *Tousey* made other fraudulent conveyances, at the time, or about the time, when the former were made ; yet, certainly, a fraudulent conveyance, made on the 21st day of *September*, is no evidence that one made on the 6th day of the same month, was so.

The labouring point, however, in this case, is, whether the rejection of *Oliver Tousey*, as a witness, was proper, or otherwise ? On this point, there may be a diversity of sentiment. It is my opinion, after full deliberation, that he was improperly rejected ; and that, on this ground, as well as on the ground of admitting *Nathan Ferris* to testify, there ought to be a new trial. That *Tousey* was not so far interested in the event of the suit, as that the verdict could ever be given in evidence against him, is very clear. In any action, brought against him, on the covenants of seisin, or warranty, in his deed, he may contend, that he had a good title to the prem-

ises, though it may have been claimed in this case, that he had not such title. But it has been urged, that, in cases of this kind, the warrantor can never be admitted as a witness, without a release of all demands on account of warranty; and that even if such release be executed, it was determined in the case of *Abby* and *Goodrich*, reported in the third volume of *Day's Rep.* page 433. that he could not be admitted to testify. A release was, in fact, executed to the witness, in the present case; and by two decisions in the state of *New-York;* one reported in the second volume of *Johnson's Rep.* page 394., and the other in the sixth volume of the same reports, that the witness, by means of the release, became competent to testify. The same doctrine is held in the case of *Middlemore* v. *Goodale, Cro. Car.* 503. To be sure, in the latter case, it was determined, that a release of the covenant should not bar the suit, because it was given by the covenantee to the covenantor, after a suit had been brought by the assignee of the covenantee, for a breach of covenant subsequent to the assignment. The court, however, said, that though it was a covenant, that run with the land, yet if the release had been executed previously to the commencement of the action, it would have been a good bar. This opinion is decisive, that after the release was executed to *Tousey*, he was a competent witness. For, if a release of the covenantee, after an assignment made by him, will be operative, *a fortiori*, one executed by him while the land is in his hands, shall be alike operative.

I think, without taking into consideration any authorities on the subject, I can evince, that the general principles of law, as to the admissibility of witnesses, would warrant the admissibility of *Tousey*, in the case under consideration.

I think, I can also evince, that a determination in the present case, that he was a good witness, will steer clear of any decision made in the case of *Abby* and *Goodrich.* I shall not discuss the question, whether this covenant be a covenant that runs with the land; but shall take it for granted, that it is so. It is an agreed principle, that if an interested witness, by taking a release, can become disinterested,

Nov. 1812.

CLARK
v.
JOHNSON.

he may be sworn. It must be agreed, also, that by taking the release, in the present case, *Tousey* was exonerated from every claim, which the plaintiff might have had against him, grounded on a breach of covenant. It follows, then, that if matters could always remain in *statu quo*, that is, if there never should be any other claimant to the land, in virtue of *Tousey's* deed, but the plaintiff, that he (*Tousey*) would become totally exonerated from any demand for damages, on account of his covenants. Equally clear is it, also, as I apprehend, that the plaintiff's heirs, in case of his death, would be, as to such claim, in exactly the same predicament, with him. But it is said, that the plaintiff may convey to a third person, and that the covenant running with the land, will vest in such third person, and that he, as assignee, may take advantage of the covenant, notwithstanding the release. Suppose I grant this; yet, is *Tousey* an interested witness after receiving the release? Will it be a matter of course, that there must be a recovery against him, in case of a failure of title? No; according to existing circumstances, it will, of course, be otherwise. There could, in such case, be no recovery against him. The question always is, whether a witness offered is interested at the time of the offer? Not, whether it is possible, in the nature of things, or probable, that in a course of events, he may be so. An heir apparent to an estate, may be a witness as to the title to that very estate: And yet, there is the greatest probability, that in process of time, he may be deeply interested in establishing the title. Thus, it appears, as I think, that *Tousey*, after receiving the release, was not, at that time, interested in the event of the suit, nor even in the question.

Now, it is to be considered, whether, by advising a new trial, we can steer clear of the decision in the case of *Abby* and *Goodrich?* Here it may be premised, that, if that decision was not agreeable to the general principles of law, on this subject, it ought not to be considered as binding. But, I trust, as I have heretofore observed, that a new trial may be advised, and still the decision in *Abby* and *Goodrich*, be preserved entire. It will be noticed, that in deciding that

case, the court went upon the ground, that *Ebenezer* and *David White*, who were offered as witnesses, were interested in the event of the suit before the release was executed; and that this release made no difference as to their interest. In truth, it made no difference as to interest. The question was as to the eastern boundary line of thirteen acres of land, which they had sold off from a larger tract owned by them. The thirteen acres were bounded, east, on *Jeremiah Goodrich*, not specifying any metes and bounds; west, by their own land, (the part not sold,) and north and south, by certain fixed boundaries. Of course, the farther east they could establish the boundary line, the more land west of the thirteen acres they would hold. But in case it had been determined, on the trial of that cause, as in fact it was determined, that the boundary line between *Abby* and *Goodrich*, was not as far east, as *Abby* and the witnesses supposed it to be; yet, the witnesses could not be liable on their covenants, as long as they owned sufficient land west to make up the thirteen acres. For *Abby* never could put his foot on any spot of land, and say, " you have warranted this land to me, and it has been taken from me." The answer to such a claim, would be, " we have warranted to you thirteen acres on the east end of our farm, and, as long as the farm contains thirteen acres, you will have your land." Thus, it appears, that the release did not alter the situation of the witnesses, as to interest, one tittle. There was no covenant broken; and, therefore, on the determination of the cause against *Abby*, (if the release had not been given,) no action could have been sustained in his favour. His only remedy would be, to go farther westward, until he could measure off thirteen acres. And after the release, he is in precisely the same situation. He then might measure off his thirteen acres; for that number was conveyed to him; nor is he debarred from it, by executing the release.

In short, as no covenant had been broken, nor could be broken, let the decision be as it might, there was nothing for the release to operate upon. It follows, then, conclusively, as has been before observed, that on the ground, that *Eben-*

*ezer* and *David White* were rejected as witnesses, before the execution of the release, on the same ground must they have been rejected afterwards.

But, by the execution of the release, in the case under consideration, *Tousey*, the witness, became divested of an interest, which he had before such execution. He had warranted to the plaintiff, the identical lands in question ; and if the title failed to any part, he was liable. By receiving the release, he was not holden by that warranty, and became thereby totally disinterested.

Such being the reasons for a new trial, it remains to be considered, whether *Tousey's* testimony, on the ground of making him a mortgagor of the premises, ought to have been rejected ? It will be observed, that in point of fact, it was a matter of total indifference to him, whether the deed should be adjudged to be fraudulent, or not : For it is stated, that the value of the land, was not sufficient to indemnify the plaintiff for the money he had to pay for *Tousey.* Of course, it could not be his interest to redeem. But suppose, that in point of law, he had an interest : It was but an interest in the question, and that very small. A judgment in the cause could not affect his interest, one way or the other. His title to redeem, (if he had one,) would still remain good. If I rightly recollect, this point was not very strenuously urged by the counsel opposed to a new trial. At least, it was treated as one of the smaller points in the case.

The great point was, whether the release restored to *Tousey* the capacity to testify. On the ground, that it did so restore to him such capacity, and that he ought to have testified, as I have before observed, I would advise a new trial.

BALDWIN, J. I advise that a new trial be granted, because *Ferris* was improperly admitted, as a witness : But I do not concur in the opinion expressed, that *Tousey* ought to have been admitted. He had granted the land in question, to *Peck*, the grantor to *Clark*, with covenants of warranty. Although *Peck* and *Clark* have discharged him, which they may do, so far as respects themselves ; yet his warranty is a

covenant real, which will run with the land, is inseparable from it, and cannot be effectually done away without reconveying the land itself. A future assignee may look back to the original grantor, notwithstanding this discharge. He is, therefore, interested in quieting the title. This, I consider a clear principle of the common law, from which it is dangerous to depart, without imperious reasons. The majority of the court were of this opinion, in the case of *Abby* v. *Goodrich*, 3 *Day's Rep.* 433.; but all agreed, that the covenantor, in that case, had another interest, which would exclude him.

Some of the other Judges did not concur entirely in the opinion delivered by Judge *Ingersoll* ; but no minutes of the observations made by them are preserved.

New trial advised.